IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| Charles W. Ferris III, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. |
| | § | _____ |
| | § | |
| Blucora, Inc. Key Leadership Change of Control Severance Plan; the Blucora, Inc. Leadership Change of Control Severance Plan Committee; and, Christopher Walters, | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

TO THE HONORABLE COURT:

Plaintiff Charles W. Ferris III ("**Ferris**" or "**Plaintiff**") files this Original Complaint against Blucora, Inc. Key Leadership Change of Control Severance Plan (the "**Plan**"), the Blucora, Inc. Leadership Change of Control Severance Plan Committee (the "**Committee**"), and Christopher Walters ("**Walters**") (the Committee and Walters, each the "**Plan Administrator**"), and would show the Court as follows:

**THE PARTIES**

1. Ferris is a resident citizen of Collin County, Texas, and resides in Plano, Texas.

2. Defendant Blucora, Inc. Key Leadership Change of Control Severance Plan (previously defined as the **"Plan"**) is an employee benefit plan within the meaning of section 3(3) of ERISA, 29 U.S.C. § 1002(3), subject to coverage under ERISA pursuant to section 4(a), 29 U.S.C. § 1003(a). The Plan was sponsored by Blucora, Inc., a Delaware corporation, now known as Avantax, Inc. ("**Avantax**," "**Blucora**," "**Plan Sponsor**," or "**Company**"). Blucora is the Plan Sponsor within the meaning of section 3(16)(B) of ERISA, 29 U.S.C. § 1002(16)(B), because it is a single employer who has established or maintained an employee benefit plan. Blucora is a domestic or foreign company licensed to do business and doing business in the state of Texas. It can be served with process by serving its registered agent, CT Corporation, 350 N. Paul St., Dallas, TX 75201, or by serving General Counsel, Avantax, Inc., 3200 Olympus Blvd, Suite 100, Dallas, Texas 75019, or wherever it may be found.

3. Defendant Blucora, Inc. Leadership Change of Control Severance Plan Committee (the "**Committee**") is the plan administrator within the meaning of section 3(16)(A) of ERISA, 29 U.S.C. § 1002(16)(A), because it is designated as such by the plan documents under which the Plan is administered. The Plan Sponsor is the plan sponsor within the meaning of section 3(16)(B) of ERISA, 29 U.S.C. § 1002(16)(B), because it is a single employer who has established or maintained an employee benefit plan. The Committee can be served with process through the registered agent of Blucora or wherever it may be found.

4. Defendant Christopher Walters, sued in his capacity as Plan Administrator, is an individual and is designated as the plan administrator by the plan documents under which the Plan is administered. Walters may be served at his regular place of business at 3200 Olympus Blvd, Suite 100, Dallas, Texas 75019, or wherever he may be found.

## JURISDICTION AND VENUE

5. This action against Defendants arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §1001 *et seq.* The Court has jurisdiction over this action pursuant to 29 U.S.C. §1132(e)(1).

6. Venue is proper in this District and Division pursuant to 29 U.S.C. §1132(e)(2) because it is where the breach took place or where the Defendants may be found.

7. Pursuant to 29 U.S.C. §1132(h), this Complaint has been served upon the Secretary of Labor, Pension and Welfare Benefits Administration, at 200 Constitution Avenue N.W., Washington, D.C. 20210, and the Secretary of the Treasury at 111 Constitution Avenue N.W., Washington, D.C. 20024, by certified mail return receipt requested.

## FACTUAL BACKGROUND

1. In May 2021, Ferris was hired by BCOR Administrative Services, LLC, a subsidiary of Avantax, Inc. (formerly Blucora, Inc.) ("**BCOR**," with Blucora, Inc., collectively referred to herein as "**Blucora**") as Vice President of Strategy.

2. Ferris became a participant in the Blucora, Inc. Key Leadership Change of Control Severance Plan under a Participation Agreement between Ferris and the Company, dated September 21, 2021. In March of 2021, the Plan had been established in response to a proxy battle between Blucora and an activist investor, who complained about the competency and levels of compensation of Blucora's executive team. The activist investor wanted to unseat Blucora's then-current board of directors, replace them with a new slate, and effect a change of control of the Company.

3. Benefits are payable under the Plan upon a "Qualifying Termination" which is

defined in pertinent part as a termination by the Company without Cause on the day of or during the 12-month period following a Change of Control.

    4.      Specifically, under the Plan, a Qualifying Termination is not:

> (ii) Participant's resignation for any reason other than for Good Reason [which in the case of a Change is Control includes the "failure of a successor to the Company to explicitly assume and agree to be bound by the Plan"]; . . . or (v) the cessation of Participant's employment with the Company or any Affiliate as the result of the sale, spin-off or other divestiture of a division, business unit or subsidiary . . . followed by employment or reemployment with the purchaser . . . *on terms and conditions substantially comparable in the aggregate (as determined by the Plan Administrator in its sole discretion) to the terms and conditions of Participant's employment with the Company or its subsidiary immediately prior to such transaction*.

(Emphasis added).

    5.      On October 31, 2022, Blucora entered into a Stock Purchase Agreement (the "**Purchase Agreement**"), along with its direct subsidiary, TaxAct Holdings, Inc. ("**TaxAct**"), to sell its tax software business to Franklin Cedar Bidco, LLC, a Delaware limited liability company ("**Bidco**"). Pursuant the Purchase Agreement, Bidco would purchase the issued and outstanding shares of capital stock of TaxAct and the membership interests of TaxAct Admin Services LLC, a wholly owned subsidiary of the Blucora ("**New LLC**") and TaxSmart Research, LLC (such transactions, the "**TaxAct Sale**").

    6.      The sale by Blucora of TaxAct to Bidco constituted a Change of Control under the Plan because the transaction constituted a sale or disposition of assets that generated 40 percent or more of the consolidated adjusted EBITDA of the Company for the fiscal year immediately preceding such sale or disposition. The Purchase Agreement included covenants that required (a) the Company to transfer the employment of certain employees who provided services to the tax software business (under the Plan, an "**Affected Participant**")—like Ferris—

to New LLC no later than immediately prior to the closing of the TaxAct Sale, such that such employees would, by operation of the TaxAct Sale, be employed by Bidco or one of its subsidiaries (including New LLC) after the closing of the TaxAct Sale (the "**Closing**"), and (b) Bidco to maintain comparability of compensation and certain employee benefits for at least one year following the Closing, including with respect to severance benefits.

7. On December 19, 2022, the TaxAct Sale closed. Upon the Closing, Ferris' employment with Blucora (specifically, its then wholly owned subsidiary, BCOR) was terminated, and Ferris was assigned to New LLC. As an Affected Participant, Ferris was eligible for benefits under the Plan because Ferris' employment with New LLC was not on terms and conditions substantially comparable to the terms and conditions of his employment with Blucora immediately prior to the Change in Control.

8. Ferris' job duties and reporting structure were materially different than they were at Blucora. The position that Ferris held prior to the subsidiary's sale was essentially eliminated. The position he held at Blucora—Vice President of Strategy—pertained to Blucora as a whole and could not be replicated by New LLC, which acquired only a division of Blucora. Because New LLC was no longer part of the Company's controlled group, Ferris' pre-acquisition position could not and did not exist going-forward. The retained applicable functions were reduced to a director level position, combined with that of chief-of-staff.

9. After the acquisition, Ferris' job duties were realigned to solely focus on Small Business for New LLC. The reporting structure for his position also changed so that he now reported to the President for New LLC, rather than the Chief Growth and Marketing Officer, and he ceased to have responsibility for any strategy-focused direct reports. Ferris, who had

previously served in a key leadership position, was now seated in a mid-level directorship role focused solely on the operations of New LLC without the organizational oversight he previously was tasked to provide.

10. Moreover, Ferris' position with the Buyer also was not comparable from a compensation and benefits standpoint. While Ferris' employment continued with New LLC, the compensation and benefits Mr. Ferris received were twenty-one percent (21%) less favorable than he received from the Company immediately before the sale. New LLC does not offer any equity compensation and does not offer executive severance benefits on an on-going basis. Likewise, the absence of severance benefits left Ferris, as well as all other similarly situated New LLC transferees, without recourse to address the substantial diminution in his job duties and benefits. These differences in compensation resulted in hundreds of thousands of dollars of loss to Ferris upon the Change in Control and transfer to New LLC.

11. Because Ferris' position as it existed at TaxAct was eliminated and his compensation and benefits were materially reduced as a result of the Change of Control, Ferris' termination clearly fell within the definition of Qualifying Termination under the Plan.

12. Worse, there was manipulation, insider-preference, and flawed Plan administration that permitted some Plan participants, prior to the Change in Control, to challenge their proposed "reemployment" with New LCC as a "resignation for good reason." Moreover, unlike these insiders who were given the opportunity to resign for Good Reason in connection with the sale to obtain severance benefits under the Plan, Ferris was not.

13. Ferris has fully exhausted the administrative process regarding his claim for benefits under the Plan. On January 3, 2023, Ferris filed an initial claim asserting that he was

entitled to severance benefits under the Plan because he incurred a "Qualifying Termination" in connection with the TaxAct Sale. The Plan Administrator denied Ferris' claim and communicated such determination to Ferris in an Initial Adverse Benefit Determination.

14. On May 9, 2023, Ferris appealed the Plan Administrator's denial of Ferris' benefit claim. On July 5, 2023, the Plan Administrator again denied Ferris' claim. Having exhausted his administrative remedies, Ferris brings this action to recover the severance benefits under the Plan to which he is entitled, which total approximately $500,000.

## RELIEF SOUGHT

1. The Plan is governed by ERISA. 29 U.S.C. §1001, et. seq. Blucora, Inc., was the Plan Sponsor for the Plan. The Committee and Walters were the Plan Administrator, and they are the named fiduciary under the Plan. As a Plan fiduciary, the Committee and Walters were obligated to handle claims for the benefit of the Plan and Plan beneficiaries and to deliver the benefits promised in the Plan. They were also obligated as a fiduciary to conduct their investigation of a claim in a fair, objective, and evenhanded manner.

2. Defendants' determination of Ferris' claim was instead biased and outcome oriented. This was in part reflected by its denial of Ferris' claim, even after being presented with substantial evidence that his job duties and compensation had been materially and adversely diminished in comparison to the duties and responsibilities he enjoyed before the acquisition.

3. Defendants' interpretation of the Plan was not legally correct. It was also contrary to a plain reading of the Plan or any reasonable construction of the Plan provisions in issue and purports be based on the placement of single comma.

4. Defendants' interpretation of the Plan and Plan language was contrary to that of

the average Plan participant. It was contrary to the common and ordinary usage of the Plan terms. Alternatively, the Plan language upon which Defendants based their denial decision was ambiguous. The ambiguous nature of those terms requires that those terms be construed against Defendants and in favor of Ferris.

5. Defendants' denial was made without substantial supporting evidence. Its decision to deny Ferris' claim was instead based upon rank speculation and guesswork. Defendants' denial decision was de novo wrong. Alternatively, it was arbitrary and capricious.

6. Defendants' denial of Ferris' claim breached the terms of the Plan. This breach violated 29 U.S.C. §1132(a)(1), entitling Ferris to the severance benefits to which he is entitled under the Plan, along with pre-judgment interest on the amounts due and unpaid, all for which he now sues.

7. Alternatively, and to the extent that no adequate remedy exists for redress under 29 U.S.C. 1 132(a)(l), Ferris seeks as a surcharge appropriate equitable relief under 29 U.S.C. § 1132(a)(3) against Defendants jointly and/or severally. Breach and causation exist, and surcharge is a proper a make- whole theory for relief.

## REQUEST FOR PREJUDGMENT INTEREST

1. Ferris requests, in addition to the benefits withheld, prejudgment interest on any such award. He is entitled to prejudgment interest as additional compensation on principles of equity.

## **CLAIM FOR ATTORNEYS' FEES & COSTS**

1. Ferris seeks an award for his reasonable attorneys' fees incurred and to be incurred in the prosecution of this claim for benefits. He is entitled to recover those fees, together with his costs of court, pursuant to 29 U.S.C. §1132(g).

## **PRAYER**

Plaintiff respectfully prays that upon trial of this matter or other final disposition, the Court find in his favor and against Defendants Blucora, Inc. Key Leadership Change of Control Severance Plan; the Blucora, Inc. Leadership Change of Control Severance Plan Committee; and Christopher Walters and issue judgment against Defendants as follows:

A. Pay to Ferris the severance benefits to which he is entitled under the Plan, as well as all prejudgment interest due thereon and as allowed by law and equitable principles;

B. Pay all reasonable attorney's fees incurred and to be incurred by Ferris in obtaining the relief sought herein, along with the costs associated with the prosecution of this matter;

C. All such other relief, whether at law or in equity, to which Ferris may show himself justly entitled.

Respectfully submitted,

/s/ *Douglas D. Haloftis*
Douglas D. Haloftis
Texas Bar Number 08804400
dhaloftis@haloftislaw.com
HALOFTIS LAW FIRM, PLLC
101 East Park Blvd., Suite 1200
Plano, Texas 75074
Telephone: 202-330-1490

**ATTORNEY FOR PLAINTIFF**